IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| VENFIL RIVERO SALES AMBROCIO,<br><br>Petitioner,<br><br>vs.<br><br>KRISTI NOEM, Secretary, Department of Homeland Security; PAM BONDI, Attorney General; SIRCE OWEN, Acting Director for Executive Office for Immigration Review; TODD M. LYONS, Acting Director of Immigration and Customs Enforcement (ICE); PETER BERG, St. Paul ICE Field Office Director; DEPARTMENT OF HOMELAND SECURITY, EXECUTIVE OFFICE FOR IMMIGRATION REVIEW, OMAHA IMMIGRATION COURT, IMMIGRATION AND CUSTOMS ENFORCEMENT, and CHRIS KLEINBERG, Dakota County Sheriff;<br><br>Respondents. | 4:25CV3226<br><br>MEMORANDUM AND ORDER |

This matter is before the Court on Venfil Rivero Sales Ambrocio's (hereinafter "Sales Ambrocio") Petition for a Writ of Habeas Corpus. (Filing No. 1). Sales Ambrocio, a noncitizen facing removal from the United States, is detained by Immigrations and Customs Enforcement. He alleges that his detention is unlawful because he was denied a bond hearing despite being entitled to one. For the reasons set forth below, his petition will be granted in part, and the Court will order that he be given a bond hearing.

## BACKGROUND

Sales Ambrocio is a Guatemalan national and citizen. (Filing No. 19 at 3). Along with his family, he entered the United States near El Paso, Texas on January 30, 2020 by walking across the Rio Grande River—not at a port of entry. (Filing No. 19 at 3). Sales Ambrocio and his family were immediately approached by a Border Patrol agent. (Filing No. 19 at 3). After questioning, Sales Ambrocio and his family were arrested and transported for processing and disposition. (Filing No. 19 at 3). Sales Ambrocio was given a Notice to Appear after an asylum officer found that he had demonstrated a credible fear of persecution or torture. (Filing No. 19-1 at 1). The Notice to Appear initiated removal proceedings and indicated it was issued on the grounds that he was "an alien present in the United States without being admitted or paroled[.]" (Filing No. 19-1 at 1). The Notice to Appear ordered Sales Ambrocio to appear before an immigration judge in Omaha, Nebraska at a time and date "to be set." (Filing No. 19-1 at 1). Sales Ambrocio was then released from custody into the United States.[1] (Filing No. 19 at 3).

Around five months later, Sales Ambrocio filed an application for asylum and for withholding of removal. (Filing No. 19 at 3). Removal proceedings stalled due to the COVID-19 pandemic and "multiple denied requests for prosecutorial discretion" until November 2024, when Sales Ambrocio "admitted the factual allegations of his Notice to Appear and conceded the charge of removability." (Filing No. 19 at 3-4).

Sales Ambrocio was arrested in Plymouth County, Iowa in September 2025 for domestic assault. (Filing No. 19 at 4). Sales Ambrocio posted bond on that charge and then was released into the custody of Immigrations and Customs Enforcement ("ICE") the day after his arrest. (Filing No. 1 at 5). ICE did not set bond for Sales Ambrocio at that point. (Filing No. 1 at 5).

---

[1] The Court confirmed with the parties that Sales Ambrocio was not admitted or paroled in the United States at this time. Counsel agreed that Sales Ambrocio was given temporary permission to enter the United States. The Court would note that the governments evidence (Filing 19-1) also supports this position. The evidence submitted by Sales Ambrocio (Filing No. 26-2 at 5), however, casts some doubt on it. The I-213 Form indicates that "Vargas" was released on parole due to lack of bedspace. (Filing No. 26-2 at 5). It is unclear whether the reference to "Vargas" is a typographical error. Nevertheless, due to the comments of counsel at the hearing and the declaration of the deportation officer assigned to Sales Ambrocio's case, the Court will proceed with the understanding that Sales Ambrocio was not admitted or paroled into the United States. That is what the Notice to Appear (Filing No. 19-1 at 1) also reflects.

2

The domestic assault charge against Sales Ambrocio was dismissed on October 6, 2025. (Filing No. 26-3 at 1).² Sales Ambrocio appeared at a hearing before an immigration judge in Omaha around two weeks later. He sought a custody re-determination. After full consideration of the evidence presented, the immigration judge denied his request for a change in custody status. (Filing No. 1 at 2); (Filing No. 26-1 at 1). The immigration judge reasoned that she lacked jurisdiction to hear his bond request or grant him bond because of the Board of Immigration Appeals' decision in *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025). (Filing No. 1 at 2; Filing No. 26-1 at 1).

Sales Ambrocio is currently detained at the Dakota County Jail in Dakota City, Nebraska. (Filing No. 1 at 5). He filed his Petition for a Writ of Habeas Corpus in this Court seeking release from custody, or in the alternative, an order directing the immigration court to give him a bond hearing.³ (Filing No. 1 at 33). The Court directed Ambrocio to serve his petition on the respondents (Filing No. 5) and ordered the Respondents⁴ to file a return on the Order to Show Cause why the Petition for Writ of Habeas Corpus should not be granted within three business days of service. (Filing No. 5; Filing No. 17). Sales Ambrocio filed his reply, and the Court then promptly set the matter for a hearing on November 25, 2025. (Filing No. 21; Filing No. 27).

**STANDARD OF REVIEW**

"Habeas is at its core a remedy for unlawful executive detention." *Munaf v. Green*, 553 U.S. 674, 693 (2008). The Constitution guarantees that the writ of habeas corpus is available to every individual detained within the United States. *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const. Art. I, § 9, cl. 2). District courts may grant writs of habeas corpus. 28 U.S.C. § 2241(a). The Court's jurisdiction to hear habeas challenges extends to immigration-related

---

² A No Contact Order was also entered against Sales Ambrocio. His wife petitioned to have the Order terminated, and an Iowa state court granted her petition on September 29, 2025. (Filing No. 26-3 at 3.)

³ Sales Ambrocio also filed a motion for a temporary restraining order and preliminary injunction. (Filing No. 2). The Court denied that motion in part because his request for a temporary restraining order was not properly presented under Fed. R. Civ. P. 65(b)(1). (Filing No. 5 at 2).

⁴ The Federal Respondents include "all but Dakota County Sheriff Chris Kleinberg[.]" (Filing No. 17 at 4 n.1). All Respondents were served, but only the Federal Respondents filed a return.

3

detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). Sales Ambrocio bears the burden to show that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3); *Walker v. Johnston*, 312 U.S. 275, 286 (1941).

## DISCUSSION

1. **Jurisdiction**

The Federal Respondents make a threshold argument that either of two statutory provisions strip the Court of jurisdiction to review Sales Ambrocio's claims. *See* 8 U.S.C. §§ 1252(b)(9) and 1252(g). Neither does.

   a) **8 U.S.C. § 1251(b)(9)**

Section 1252(b)(9) channels judicial review of "all questions of law and fact . . . arising from any action taken or proceeding brought to remove an alien from the United States" into a petition for review of a final order of removal. The Federal Respondents argue that Sales Ambrocio seeks "precluded review" of the "immigration court's non-final order to deny him release on bond during his removal proceedings." (Filing No. 17 at 7). In other words, they say, Sales Ambrocio "*is* challenging the decision to detain him in the first place, presumably falling within the jurisdictional bar of § 1252(b)(9)." (Filing No. 17 at 8) (emphasis in original). The Court concludes otherwise.

As the Supreme Court has recognized, Section 1252(b)(9) "does not present a jurisdictional bar where those bringing suit are not asking for review of an order of removal, the decision to seek removal, or the process by which removability will be determined." *Dep't of Homeland Sec. v. Regents of the Univ. of California*, 591 U.S. 1, 29 (2020) (quoting *Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018)). Sales Ambrocio is not asking for any of those things here. He merely challenges his continued "detention without a bond hearing"—not the initial decision to detain him. (Filing No. 21 at 5); *see Hernandez Marcelo v. Trump*, 2025 WL 2741230, at *6 (S.D. Iowa Sept. 10, 2025). His unlawful detention claims can be resolved without affecting pending removal proceedings. *Ozturk v. Hyde*, 136 F.4th 382, 399 (2d Cir. 2025).[5] Even if Sales Ambrocio's

---

[5] The Federal Respondents also argue that "[t]he plurality of the Supreme Court's opinion from *Jennings* suggests 8 U.S.C. § 1252(b)(9) bars a claim challenging the immigration judge's initial decision to detain an alien." (Filing No. 17 at 7). That argument is unavailing. For one, "the discussion of § 1252(b)(9) in *Jennings* is not part of the plurality opinion of the Court." *Ozturk*,

4

detention claims have a connection to a pending removal proceeding, his claims in this case "do not themselves challenge removal proceedings and thus § 1252(b)(9)'s channeling function has no role to play." *Ozturk v. Hyde*, 136 F.4th 382, 399 (2d Cir. 2025) (quoting *Canal A Media Holding, LLC v. United States Citizenship & Immigr. Servs.*, 964 F.3d 1250 (11th Cir. 2020)). Section 1252(b)(9), then, does not divest the Court of jurisdiction over Sales Ambrocio's claims.

### b) 8 U.S.C. § 1252(g)

The Court reaches the same conclusion as to § 1252(g). That section provides that, except as otherwise specified, "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." In the Federal Respondents' view, § 1252(g) applies because the "immigration court's decision to deny [Sales Ambrocio] bond clearly arises from the court's adjudication of the removal case." (Filing No. 17 at 9).

Again, Supreme Court precedent forecloses that line of argument. Section 1252(g) is a "narrow" jurisdictional bar that applies only to three discrete actions that the Attorney General make take—commencing proceedings, adjudicating cases, or executing removal orders. *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999); *see Jennings*, 583 U.S. at 294 ("We did not interpret [8 U.S.C. § 1252(g)] to sweep in any claim that can technically be said to 'arise from' the three listed actions of the Attorney General. Instead, we read the language to refer to just those three specific actions themselves."). Section 1252(g) does not apply to deportation cases more generally. *Reno,* 525 U.S. at 482.

Here, Sales Ambrocio does not challenge the decision to commence, adjudicate, or execute a removal order. He challenges only the legality of his ongoing detention, so his claims fall outside § 1252(g)'s reach. *See, e.g., Eliseo A.A. v. Olson*, 2025 WL 2886729, at *4 (D. Minn. Oct. 8, 2025); *Barrajas v. Noem*, 2025 WL 2717650, at *3 (S.D. Iowa Sept. 23, 2025).

---

136 F.4th at 399. Further, that part of *Jennings* "does not support the conclusion that § 1252(b)(9) bars jurisdiction over habeas challenges to detention." *Id.* That section in fact rejected the government's "expansive interpretation of § 1252(b)(9)." *Jennings,* 583 U.S. at 293.

5

### 2. Statutory basis for detention

Having disposed of the Federal Respondents' jurisdictional arguments, the Court turns to the merits of Sales Ambrocio's claims. Placing those claims in context requires some background on the statutory detention framework at issue here.

To implement its immigration policy, the Government must be able to decide (1) who may enter the country and (2) who may stay here after entering. *Jennings,* 583 U.S. at 285. "That process of decision generally begins at the Nation's borders and ports of entry, where the Government must determine whether an alien seeking to enter the country is admissible." *Id.* Under 8 U.S.C. § 1225, an alien who "arrives in the United States," or "is present" in this country but "has not been admitted," is treated as "an applicant for admission." *Id.* § 1225(a)(1). Applicants for admission must "be inspected by immigration officers" to ensure that they may be admitted into the country consistent with U.S. immigration law. *Id.* § 1225(a)(3).

Applicants for admission fall into either of two categories, § 1225(b)(1) or § 1225(b)(2). Section 1225(b)(1) applies to an alien "who is arriving in the United States," § 1225(b)(1)(A)(i), or, subject to the discretion of the Attorney General, "has not been admitted or paroled into the United States, and who has not affirmatively shown, to the satisfaction of an immigration officer, that the alien has been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility under this subparagraph," § 1225(b)(1)(A)(iii). Section 1225(b)(2), by contrast, "is broader" and generally "serves as a catchall provision that applies to all applicants for admission not covered by § 1225(b)(1)[.]" *Id.* Noncitizens covered by Section 1225(b)(2) are not eligible for bond during the pendency of removal proceedings. *See* § 1225(b)(2)(A) ("[I]n the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for [removal proceedings]."); *Jennings,* 583 U.S. at 297 ("Read most naturally, §§ 1225(b)(1) and (b)(2) thus mandate detention of applicants for admission until certain proceedings have concluded . . . And neither § 1225(b)(1) nor § 1225(b)(2) says anything whatsoever about bond hearings.").

8 U.S.C. § 1226, by contrast, "generally governs the process of arresting and detaining" noncitizens found within the United States "pending their removal." *Jennings,* 583 U.S. at 288. Section 1226(a) "sets out the default rule: The Attorney General may issue a warrant for the arrest

and detention of an alien 'pending a decision on whether the alien is to be removed from the United States.'" *Id.* (quoting § 1226(a)). And except as provided in § 1226(c),[6] the Attorney General "may release" an alien detained under § 1226(a) "on . . . bond" or "conditional parole." *Id.* Federal regulations provide that noncitizens detained under § 1226(a) receive bond hearings at the outset of detention. *See* 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1).

In sum, "U.S. immigration law authorizes the Government to detain certain *aliens seeking admission into the country* under §§ 1225(b)(1) and (b)(2). It also authorizes the Government to detain certain aliens *already in the country* pending the outcome of removal proceedings under §§ 1226(a) and (c)." *Jennings,* 583 U.S. at 289 (emphasis added). The issue here is which provision applies to Sales Ambrocio. He says § 1226(a) and asserts he is therefore entitled to a bond hearing. The Federal Respondents say § 1225(b)(2) and assert he is not entitled to a bond hearing.

When interpreting a statute, the Court "begin[s] with the text." *Designworks Homes, Inc. v. Columbia House of Brokers Realty, Inc*., 9 F.4th 803, 806 (8th Cir. 2021). But "[t]he definition of words in isolation . . . is not necessarily controlling in statutory construction. A word in a statute may or may not extend to the outer limits of its definitional possibilities." *Id.* (quoting *Dolan v. U.S. Postal Serv*., 546 U.S. 481, 486 (2006)). When interpreting a statute, the Court must also consider the statutory context in which the words in question appear, including both "the specific context in which th[e] language is used, and the broader context of the statute as a whole." *Id.* (quoting *Robinson v. Shell Oil Co.,* 519 U.S. 337, 341 (1997)).

Applying those principles here, the Court concludes that Sales Ambrocio is detained under § 1226(a). Recall that the Supreme Court characterized § 1225 and § 1226 as establishing two tracks—one that applies to noncitizens seeking admission into the country and one that applies to noncitizens already present in the country. *Jennings,* 583 U.S. at 289. The particular facts of this case show that Sales Ambrocio falls within the latter track.

---

[6] Under § 1226(c), the "Attorney General shall take into custody any alien" who falls into one of several enumerated categories involving criminal offenses and terrorist activities. § 1226(c)(1). The Attorney General may release aliens in those categories "only if the Attorney General decides . . . that release of the alien from custody is necessary" for witness-protection purposes and "the alien satisfies the Attorney General that the alien will not pose a danger to the safety of other persons or of property and is likely to appear for any scheduled proceeding." § 1226(c)(2).

The Court does not doubt that, at the time he was arrested at the border in 2020, Sales Ambrocio was an "applicant for admission" who was also "seeking admission" into the country. He both "ha[d] not been admitted" and "arrive[d] in the United States." § 1225(a)(1). But things "change[d]" once Sales Ambrocio was released into the country. Cf. *Zadvydas v. Davis,* 533 U.S. 678, 693 (2001). He lived here for over five years before he was re-detained by ICE. That means, in the Court's view, Sales Ambrocio was no longer "seeking admission" into the United States. "Seeking admission" has no statutory definition, so it takes its plain meaning. *Padilla v. Galovich et al.,* 2025 WL 3251446, at *4 (W.D. Wis. Nov. 21, 2025). By that plain meaning, "seeking" implies action, and noncitizens "who have been present in the country for years are not actively 'seeking admission.'" *Beltran Barrera v. Tindall*, 2025 WL 2690565, at *4 (W.D. Ky. Sept. 19, 2025); *Belsai D.S. v. Bondi*, 2025 WL 2802947, at *6 (D. Minn. Oct. 1, 2025) ("One who is 'seeking admission' is presently attempting to gain admission into the United States."); *Lopez-Campos v. Raycraft*, 2025 WL 2496379, at *6 (E.D. Mich. Aug. 29, 2025) ("'[S]eeking admission' . . . implies action – something that is currently occurring, and in this instance, would most logically occur at the border upon inspection.").

Nor does it appear that an immigration officer determined that Sales Ambrocio was "not clearly and beyond a doubt entitled to be admitted." See 8 U.S.C. § 1225(b)(2)(A). It is also notable that Sales Ambrocio's Notice to Appear did not designate him as an "arriving alien," which is "the language used to define the scope of § 1225(b)(2)(A) in the implementing regulations." *Ochoa Ochoa v. Noem*, 2025 WL 2938779, at *6 (N.D. Ill. Oct. 16, 2025); *see* 8 C.F.R. § 235.3(c)(1).

Summed up, Section 1225(b)(2), by its plain terms, only applies in the case of "an alien seeking admission." Having lived in the United States for years before being re-detained, Sales Ambrocio was no longer "seeking admission" here, so § 1225(b)(2) does not apply.

Taken to its logical conclusion, Federal Respondents' reading of § 1225(b)(2)(A) would mean that it applies to all noncitizens present in the United States who have not been admitted. That cannot be. First, the Federal Respondents' arguments run headlong into *Jennings* and its language characterizing § 1226(a) as applying to "aliens already in the country," like Sales Ambrocio was when he was re-detained in 2025. Nor is the Court persuaded that both § 1225(b)(2) and § 1226(a) "overlap" such that they could apply to one noncitizen at the same time. As then-

8

Attorney General Bill Barr explained, "section [1225] (under which detention is mandatory) and section [1226(a)] (under which detention is permissive) can be reconciled only if they apply to different classes of aliens." *Matter of M-S-,* 27 I. & N. Dec. 509, 516 (2019); see also *Hernandez Marcelo v. Trump*, 2025 WL 2741230, at *8 (S.D. Iowa Sept. 10, 2025) ("The correct distinction when assessing detention pending removal lies between those located in the United States and those located outside the United States.").

Further, the Federal Respondents' interpretation would render "recent congressional enactments superfluous." *Giron Reyes v. Lyons*, 2025 WL 2712427, at *5 (N.D. Iowa Sept. 23, 2025). Enacted earlier this year, the Laken Riley Act amended § 1226 by adding § 1226(c)(1)(E), which mandates detention for noncitizens who are inadmissible under §§ 1182(a)(6)(A) (noncitizens present in the United States without being admitted or paroled, like Sales Ambrocio), 1182(a)(6)(C) (misrepresentation), or 1182(a)(7) (lacking valid documentation) and have been arrested for, charged with, or convicted of certain crimes. § 1226(c)(1)(E)(i)–(ii). Because § 1182(a)(6)(A)(i) specifically refers to aliens "present in the United States without being admitted or paroled," and § 1226(c)(1)(E) requires detention without bond of these individuals if they have also committed certain enumerated crimes, the recently created statutory exception would be redundant if § 1225(b)(2) also authorized their detention. "That is, because an alien present in the United States without admittance would be unlikely to prove that they are 'clearly and beyond a doubt entitled to be admitted,' ICE would never need to rely on § 1226(c)(1)(E) to detain them." *Pizarro Reyes v. Raycraft*, 2025 WL 2609425, at *5 (E.D. Mich. Sept. 9, 2025). Statutes should be read to avoid making any provision "superfluous, void, or insignificant." *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) Adopting the Federal Respondents' interpretation would do just that. Therefore, their interpretation is untenable.

Finally, based on the language of the statute itself, the most natural interpretation of § 1225 is that it applies to aliens encountered as they are attempting to enter the United States or shortly after they gained entry without inspection. Start with the title: "Inspection by immigration officers; expedited removal of inadmissible *arriving* aliens; referral for hearing." (emphasis added); *Chernin v. United States*, 149 F.3d 805, 816 (8th Cir. 1998) ("[I]t is instructive to turn to the title of the statute to aid in resolving textual ambiguity."). Elsewhere too, Section 1225 "repeatedly refers to aliens entering the country." *Lopez v. Sheehan*, 2025 WL 3046183, at *4 (N.D. Iowa Oct.

9

30, 2025); *see* 8 U.S.C. § 1225(b)(1)(A)(i) (screenings for aliens "arriving in the United States"); *id.* § 1225(b)(2)(C) (aliens "arriving on land . . . from a foreign territory contiguous to the United States" may be returned to that territory pending removal proceedings); *id.* § 1225(d)(1) (immigration officers authorized to inspect "any vessel, aircraft, railway car, or other conveyance or vehicle in which they believe aliens are being brought into the United States"). The statute further addresses "crewm[e]n" and "stowaway[s]" in Section 1225(b)(2)(B). Section 1225's text suggests it was "set up with arriving aliens in mind." *Lopez,* 2025 WL 3046183, at *4.

The Court recognizes that the Board of Immigration Appeals reached the opposite conclusion in *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025). But the Court is not bound by that decision. *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 386 (2024). Nor does the Court find it particularly persuasive, especially given that it represents a departure from longstanding agency practice. *See* Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures, 62 Fed. Reg. 10,312, 10,323 (Mar. 6, 1997) ("Aliens who are present without having been admitted or paroled (formerly referred to as aliens who entered without inspection) will be eligible for bond and bond redetermination."). Indeed, "[f]or almost three decades, most noncitizens who entered without inspection that were placed in standard removal proceedings received bond hearings, unless subject to an exception." *Pizzaro Reyes,* 2025 WL 2609425, at *8.

The Court, in accordance with the "overwhelming majority" of district courts to consider this issue, therefore concludes that § 1226(a), not § 1225(b), applies to a noncitizen like Sales Ambrocio who is detained (or in this case, re-detained) within the United States. *Barrajas*, 2025 WL 2717650, at *4 (collecting cases). Thus, Sales Ambrocio's detention without a bond hearing is unlawful.[7]

---

[7] The parties directed most of their attention to the statutory issue in their briefs. But Sales Ambrocio also alleged that his continued detention violates his Fifth Amendment right to due process. (Filing No. 1 at 32). The Court need not reach the constitutional issues here because it will grant Sales Ambrocio the relief he seeks, in part, based on its determination that § 1226(a) applies. If the Federal Respondents do not provide Sales Ambrocio with a bond hearing or release him within the time allotted, Sales Ambrocio may renew his Fifth Amendment Due Process claim.

Just one issue[8] remains—the proper remedy. Sales Ambrocio seeks either his release from custody or an order directing the immigration court to give him a bond hearing. (Filing No. 1 at 33). Only the latter is appropriate here. The unlawful aspect of Sales Ambrocio's detention is the fact that he is entitled to a bond hearing but has not received one. His detention itself, however, is discretionary. *See* § 1226(a); *Ochoa Ochoa,* 2025 WL 2938779, at *8. To remedy the unlawful aspect of Sales Ambrocio's detention, the Court will order that the Federal Respondents provide him with a bond hearing pursuant to § 1226(a) and 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1). Accordingly,

**IT IS ORDERED:**

1. Petitioner Venfil Rivero Sales Ambrocio's Petition for a Writ of Habeas Corpus (Filing No. 1) is granted in part and denied in part, as set forth above.
2. The Federal Respondents shall provide Petitioner with a bond hearing pursuant to 8 U.S.C. § 1226(a) and the corresponding regulations within seven days of this order.
3. If the Federal Respondents do not provide Respondent with a bond hearing under 8 U.S.C. § 1226(a) as required by this Order, Petitioner must be immediately released from detention.
4. Within ten days of the date of this Order, the parties shall provide the Court with a status update concerning the results of any bond hearing conducted pursuant to this Order, or if no bond hearing was held, advise the Court regarding Petitioner's release.
5. Petitioner's Motion for Preliminary Injunction and Temporary Restraining Order (Filing No. 2) is denied as moot.
6. Counsel for the Federal Respondents shall inform Respondent Chris Kleinberg as to the decision of the Court upon the filing of the Court's Memorandum and Order.

---

[8] As to Sales Ambrocio's request for attorney's fees and costs under the Equal Access to Justice Act, he may move separately within thirty days of final judgment in this action to recover them. *See* 28 U.S.C. § 2412(d); 5 U.S.C. § 504.

7. A separate judgment will be entered.

Dated this 25th day of November, 2025.

BY THE COURT:

_____
Susan M. Bazis
United States District Judge